USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/21/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BARBARIAN RUGBY WEAR, INC.,

        Plaintiff

  - against -

PRL USA HOLDINGS, INC.,

        Defendant

---

06 Civ. 2652 (JGK)

Opinion and Order

**JOHN G. KOELTL, District Judge:**

The plaintiff, Barbarian Rugby Wear, Inc. ("Barbarian") brought this action against PRL USA Holdings, Inc. ("PRL"), seeking a declaratory judgment that certain of its trademarks do not violate trademarks held by PRL, the cancellation of two of PRL's trademarks, and civil damages. The defendant has moved to dismiss for lack of subject matter jurisdiction.

The plaintiff seeks a declaratory judgment, pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201 and 2202, that its use of the trademarks RUGBY ROCKS! and WORLD RUGBY, and the trade name BARBARIAN RUGBY WEAR, INC. do not infringe any of the defendant's marks or violate any related rights of the defendant. The plaintiff also seeks an order canceling the defendant's registration for the trademark RUGBY, for having been fraudulently procured, and for the trademark RUGBY NORTH AMERICA, for having been fraudulently

1

maintained. In addition, the plaintiff seeks an award of damages in the amount of $300,000.00 as a consequence of the defendant's alleged false declarations in obtaining and maintaining its trademarks.

The defendant moved to dismiss this action, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction. The defendant argues, first, that the Court has no subject matter jurisdiction to issue a declaratory judgment in this matter because there is no actual controversy between the parties, within the meaning of the DJA. The defendant argues further that until all administrative remedies are exhausted, subject matter jurisdiction over the cancellation claim can only be supplemental. Therefore, if the Court has no jurisdiction to issue a declaratory judgment regarding the trademarks, it also lacks jurisdiction over the cancellation claim.

I.

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim must be dismissed when the federal court lacks jurisdiction over the subject matter. "When considering a motion to dismiss for lack of subject matter jurisdiction . . . a court must accept as true all material factual allegations in the complaint." Shipping Financial

Services. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Id. The plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. Pony Pal, LLC. V. Claire's Boutiques, Inc., No. 05 CIV 2355(CSH), 2006 WL 846354, at *3 (S.D.N.Y. Mar. 31, 2006).

## II.

None of the facts relevant to the present motion are in dispute. The plaintiff is a Canadian corporation, established in 1981 under the name Barbarian Sportswear Mfg. Ltd. (Declaration of Rob Hartle, dated May 12, 2006 ("Hartle Decl.") ¶ 2.) Its name was changed to Barbarian Rugby Wear, Inc. in January 1996. (Id. at ¶ 3.) It manufactures sporting apparel for playing rugby and casual clothing for leisure wear. (Id. at ¶ 4.) The plaintiff has done business continuously in the United States since 1982. (Id. at ¶ 3.)

On May 26, 1998, Barbarian filed an application to register the mark RUGBY ROCKS! with the U.S. Patent and Trademark Office ("PTO"). (Compl. ¶ 8.) The application matured to registration on October 3, 2000. (Id.) On May 23, 2001, Barbarian filed an application to register WORLD RUGBY.

3

(Id. at ¶ 9.) In its application, Barbarian listed "rugby shirts" as the type of merchandise that WORLD RUGBY would cover. (Declaration of G. Roxanne Elings, dated April 26, 2006 ("Elings Decl.") ¶ 5.) On March 15, 2002, Barbarian filed an application to register BARBARIAN RUGBY WEAR, INC. (Compl. ¶ 10.) This application matured to registration on August 12, 2003. (Id.)

RUGBY NORTH AMERICA was registered to a predecessor in interest to the defendant on February 24, 1998. (Id. at ¶ 6.) RUGBY was registered to the same party on April 11, 2000. (Id. at ¶ 7.) The defendant acquired ownership rights over RUGBY NORTH AMERICA and RUGBY on January 7, 2003, and recorded the assignment of interest with the PTO on April 11, 2003. (Id. at ¶ 11.)

The defendant's counsel sent a cease-and-desist letter to the plaintiff dated January 5, 2004, stating the defendant's belief that the plaintiff's use and registration of its three marks constituted trademark infringement, false designation of origin and false descriptions and representations in violation of 15 U.S.C. § 1125(a) as well as trademark infringement and unfair competition under the common law. (Compl. ¶ 14.) The letter demanded that Barbarian agree not to use any trademark incorporating the RUGBY element except to sell clothing and merchandise solely to rugby teams. The letter cautioned that

4

the plaintiff would be liable for an injunction and monetary damages "in any litigation" in connection with the defendant's attempts to protect its rights over the subject marks. The letter noted: "Unless you notify us in writing immediately that you will promptly comply with the foregoing demand, we will be forced to take appropriate action to protect our client's valuable legal rights." (Elings Decl. Exh. B.)

Barbarian's counsel responded, in a letter dated January 23, 2004, declining to comply with PRL's demands. (Elings Decl. Exh. C.) The letter stated that it appeared there were a large number of parties in the marketplace who used the term "rugby," that no confusion was resulting from Barbarian's use of the term, and that in any event, the PTO had concluded that no confusion would result. (Id.) In a letter dated October 22, 2004, PRL's new counsel wrote a second letter to Barbarian requesting that Barbarian amend its application for the mark WORLD RUGBY to cover only the more narrow designation "shirts for playing the sport of rugby." (Elings Decl. Exh. F.) Barbarian's counsel responded that it had no intention of complying with this second demand. (Elings Decl. ¶ 8.)

PRL then initiated opposition proceedings against Barbarian's application for the mark WORLD RUGBY in the Trademark Trial and Appeal Board (TTAB) of the PTO on December 27, 2004. (Compl. ¶ 9.) Barbarian responded with

5

cancellation proceedings against PRL's RUGBY NORTH AMERICA mark on October 17, 2005. (Elings Decl. Exh. I.) The cancellation proceeding has been consolidated with PRL's opposition proceedings. (Elings Decl. ¶ 10.) These matters remain pending with the TTAB.

## III.

Barbarian seeks a declaratory judgment that its marks do not infringe those belonging to PRL and do not violate any rights of PRL related to those marks. The DJA provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . . ." 28 U.S.C. § 2201(a). The DJA thus requires explicitly that there be an "actual controversy." In addition, for subject matter jurisdiction, there must be an independent basis for federal jurisdiction because it is well established that the DJA does not expand the jurisdiction of the federal courts, and a basis for subject matter jurisdiction other than the DJA must be found. See Albradco, Inc. v. Bevona, 982 F.2d 82, 85 (2d Cir. 1992).

In this case it is undisputed that there is an independent basis for federal jurisdiction. The complaint asserts jurisdiction under 28 U.S.C. § 1338, among other

6

bases, and that statute confers original jurisdiction in this district court for "any civil action arising under any Act of Congress relating to patents . . . copyrights and trademarks." The complaint also asserts that the claims arise under the Lanham Act, 15 U.S.C. §1501, relating to trademarks. These allegations are sufficient to allege a basis for federal jurisdiction independent of the DJA.

There remains, however, the question whether there is "a case of actual controversy" between the parties sufficient for DJA jurisdiction to be exercised. The parties both agree that jurisdiction over the plaintiff's cancellation claims is proper only if there is jurisdiction to issue a declaratory judgment.

The Second Circuit Court of Appeals has formulated a two-pronged test to determine whether an actual controversy is present in a declaratory judgment action relating to alleged trademark infringement. Starter Corporation. v. Converse, Inc., 84 F.3d 592 (2d Cir. 1996). The test has two prongs, both of which must be satisfied for jurisdiction: "(1) has the defendant's conduct created a real and reasonable apprehension of liability on the part of the plaintiff, and (2) has the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant." Id. at 595.

7

The defendant asserts that the plaintiff cannot satisfy either prong.

**A.**

The defendant argues that Barbarian has not presented evidence of a "real and reasonable apprehension of liability." The defendant admits that it sent the plaintiff a cease-and-desist letter, but argues that neither the letter nor any subsequent action it has taken in the matter has presented the plaintiff with a real and reasonable apprehension of liability.

The defendant's letter of January 5, 2004 does not make a direct threat of litigation, but it is well established that an indirect threat can create a real and reasonable apprehension of liability. See Muller v. Olin Matheson Chemical Corp., 404 F.2d 501 (2d Cir. 1968) (relied upon in American Pioneer Tours, Inc. v. Suntrek Tours, Ltd., No. 97 CIV. 6220, 1998 WL 60944, at *6-7 (S.D.N.Y. Feb. 13, 1998)).

The defendant characterizes its letter to the plaintiff as a request. That characterization is belied by its references to litigation and to the potential for monetary damages the plaintiff might incur from the continued use of its trademarks. Further, the letter demands that the plaintiff desist from using its marks and threatens that the defendant will "take appropriate action" to protect its

8

"valuable legal rights." (Elings Decl. Exh. B at 2.) It would have been reasonable for the plaintiff to conclude that this letter constituted a threat of liability.

The defendant stresses that more than two years and three months passed between January 5, 2004 and the filing of the present action without it bringing suit against Barbarian. The defendant's argument seems to be that the threat of litigation should have dissipated with the retention of new counsel and the passage of time without a renewed threat or actual litigation. Addressing the action it took with the TTAB in that time period, the defendant argues that initiating opposition proceedings with the board is not enough, by itself, to create an actual controversy. While this is correct, it disregards that the opposition proceedings at the TTAB represent only the most recent coercive action taken by the defendant and not the only one. Cf. American Pioneer Tours, 1998 WL 50944; Progressive Apparel v. Anheiser-Busch, Inc., No. 95 CIV. 2794, 1996 WL 50227 (S.D.N.Y. Feb. 7, 1996).

The plaintiff explains that it filed this action in response to the defendant's use of the RUGBY mark, begun in October 2005, which the plaintiff believed indicated an increasing likelihood of litigation. (Hartle Decl. ¶ 9.)

The defendant's initial letter to the plaintiff clearly presented a threat of litigation, which was not very well

9

disguised. The time that has elapsed after it was sent has not served as a cooling off period, nor has it been used for amicable negotiations. Rather, the parties' relationship appears to have worsened so that the plaintiff's apprehension of liability was both real and reasonable at the time it filed this action. The first prong of the test is therefore satisfied.

**B.**

The defendant also argues that the plaintiff has not engaged in a course of conduct which has brought the parties into an adversarial relationship. The core of the present dispute is the defendant's opposition to the plaintiff's use of its mark WORLD RUGBY to cover "rugby shirts" (which would grant the plaintiff broader rights than a mark which covered "shirts for playing the sport of rugby.") (Elings Decl. Exh. F.) The defendant argues that the mere intention to use a mark that might cause adversarial conflict does not meet the second prong of the test.

The defendant's argument is unpersuasive. The Court of Appeals for the Second Circuit has held that "an actual case or controversy exists where a party has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product." Starter Corp., 84 F.3d 592, 595-96 (internal quotations omitted). In this case,

the plaintiff already manufactures and markets leisure wear, making irrelevant the question of whether mere intention makes for an actual controversy. (Hartle Decl. ¶¶ 3, 5, 6, 8.) Indeed, the defendant has sought to prevent the plaintiff from using its mark on a range of goods that the plaintiff alleges it currently markets and is important to its business. (Hartle Decl. ¶.) Therefore, it appears that the parties' relationship is sufficiently adversarial to satisfy the second prong of the test. In light of the foregoing, it is clear that an actual controversy exists between the parties. The Court has subject matter jurisdiction to issue a declaratory judgment.

## CONCLUSION

For the reasons explained above, the defendant's motion to dismiss the action for declaratory judgment is **denied**. Because the Court has jurisdiction to issue a declaratory judgment, it has supplemental jurisdiction to rule on the plaintiff's cancellation claim. The defendant's motion to dismiss the cancellation claim is **denied**.

**SO ORDERED.**

**Dated:** New York, New York
July 21, 2006

John G Koeltl
United States District Judge

11