UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                     :

BARBARIAN RUGBY WORLD, INC.,
                                                     :

                 Plaintiff,                            06 Civ. 2652 (JGK) (DF)
                                                     :

    -against-                                 **REPORT AND**
                                                     :                **RECOMMENDATION**

PRL USA HOLDINGS, INC.,
                                                     :

                 Defendant.
------------------------------------------------------------------------X

**TO THE HONORABLE JOHN G. KOELTL, U.S.D.J.:**

## INTRODUCTION

This trademark case is before the Court on a motion by defendant PRL USA Holdings, Inc. ("PRL") to preclude plaintiff Barbarian Rugby World, Inc. ("Barbarian") from seeking damages from PRL under Section 38 of the Lanham Act, 15 U.S.C. § 1120. For the reasons set forth below, I recommend that the motion (Dkt. 91) be granted.

## BACKGROUND

This case arises out of a dispute between the parties regarding their respective rights to various trademarks incorporating the word "RUGBY," primarily in connection with clothing. In January 2004, PRL's counsel sent Barbarian a "cease and desist" letter, demanding that Barbarian refrain from certain purportedly infringing uses of the marks "RUGBY ROCKS!," "BARBARIAN RUGBY WEAR, INC.," and "WORLD RUGBY." (*See* Amended Complaint for Declaratory Judgement and Cancellation, dated Mar. 19, 1008 ("Am. Compl.") (Dkt. 71), at ¶ 14 and Ex. H; Declaration of David Saenz in Support of PRL USA Holdings, Inc.'s Motion To Preclude Barbarian Rugby Wear, Inc. from Seeking Damages Under 15 U.S.C. § 1120, dated July 24, 2008 ("Saenz Decl.") (Dkt. 93), at ¶ 5 and Ex. B.) PRL claimed that it held registered

trademarks for "RUGBY" (Registration No. 2,339,652) and "RUGBY NORTH AMERICA" (Registration No. 2,139,322), which gave it superior rights to the use of the marks in question. (*See id*.)  Further, when Barbarian applied later in 2004 to register the trademark "WORLD RUGBY," PRL opposed Barbarian's application, again asserting a claim of superior rights based on PRL's own trademark registrations.  (See Am. Compl., at ¶ 15 and Exs. J, K; Saenz Decl., at ¶ 6 and Ex. C.)

In this action, Barbarian contends that, to the extent PRL holds trademark registrations that have enabled it to assert superior rights, PRL obtained those registrations fraudulently, by making false statements to the United States Patent and Trademark Office (the "PTO") regarding PRL's purported use of the marks in commerce.  (*See* Am. Compl., at ¶¶ 26-34, 36-39, 42-46.) Pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, Barbarian now seeks the cancellation of PRL's trademark registrations.  (*See id.* at pp. 1, 9.)  Further, invoking Section 38 of the Act, 15 U.S.C. § 1120, which permits a civil right of action for damages against any party that fraudulently obtains a trademark registration, Barbarian seeks to recover from PRL – as damages – the counsel fees and related costs that Barbarian incurred (1) in defending itself against PRL's cease-and-desist demand, (2) in responding to PRL's opposition to its "WORLD RUGBY" application in the PTO, and (3) in prosecuting this lawsuit and defending against PRL's counterclaims.  (*See id.,* at ¶¶ 34, 40, 47, and p. 9; *see also* Memorandum of Law by Barbarian Rugby Wear, Inc. In Support of Opposition to Motion to Preclude, dated Aug. 7, 2008 ("Pl. Mem.") (Dkt. 96), at 3 (arguing that "the measure of damages suffered by Barbarian . . . as a result of the fraudulently obtained and maintained registrations are the costs of defending itself, of defending it trademark rights, and of exposing the fraud").)

On its pending motion, PRL argues that, even assuming the truth of Barbarian's allegations, Barbarian cannot recover its attorneys' fees or other litigation costs as a measure of damages under Section 38 of the Lanham Act. (*See generally* PRL USA Holdings, Inc.'s Memorandum of Law in Support of Its Motion To Preclude Barbarian Rugby Wear, Inc. from Seeking Damages under 15 U.S.C. § 1120, dated July 24, 2008 ("Def. Mem.").) According to PRL, this "damages" claim by Barbarian is nothing more than an attempted end-run around Section 35 of the Act, 15 U.S.C. § 1117, which only permits courts to grant attorneys' fees awards in "exceptional" cases. (*See id.,* at 1, 6-7.) Based on the governing case law on this point, PRL seeks, by its motion, to preclude Barbarian from claiming attorneys' fees and related costs as Section 38 damages. (*See id.,* at 13.)

PRL also argues in its motion that, to the extent Barbarian's theory of compensatory damages is based on the fact that it incurred costs in responding to PRL's assertion of its trademark rights in a pre-litigation demand letter and in the PTO, Barbarian should be barred from seeking damages under the *Noerr-Pennington* doctrine, which has been held to bar claims for economic injury resulting from a trademark holder's assertions of its rights. (*See id.,* at 1-2, 7-12.)

Finally, PRL argues that, as Barbarian has no legal basis to seek its attorneys fees and costs as "damages" in this case, it should be precluded from introducing any evidence of such purported damages at trial, as such evidence would lack probative value and be unduly prejudicial to PRL. (*See id.,* at 12-13 (relying on Fed. R. Evid. 403).) PRL acknowledges that, if Barbarian should prevail in this case, it would be entitled to argue for an award of attorneys' fees

and costs under Section 35 of the Lanham Act, but argues that any motion for such an award should be made after the conclusion of the trial, and not involve the jury.  (*See id.*)

Effectively, as Barbarian has never suggested in this case that it suffered any type of injury other than the incurring of legal fees and costs as a result of PRL's allegedly fraudulent conduct (*see id.,* at 3-5), PRL's motion seeks to preclude Barbarian from introducing *any* evidence of monetary damages on its Section 38 claim (*see id.,* at 13).

## DISCUSSION

**I.   ATTORNEYS' FEES INCURRED BY BARBARIAN IN THIS LITIGATION MAY NOT BE RECOVERED AS "DAMAGES" UNDER SECTION 38 OF THE LANHAM ACT.**

Section 38 of the Lanham Act, 15 U.S.C. § 1120, provides for a civil right of action against any party that has fraudulently procured a trademark registration:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120.  The section, as written, is silent as to whether the incurring of attorneys' fees in litigation could be considered a compensable economic injury under the Act.

Such attorneys' fees, however, are explicitly recoverable under Section 35 of the Act, 15 U.S.C. § 1117, which provides, in relevant part, that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  PRL argues that, in this case, Section 35 provides the exclusive avenue by which Barbarian may seek to recover its attorneys' fees and costs.  (*See* Def. Mem. at 6-7.)

4

PRL's argument is persuasive, based on *Blue Bell, Inc. v. Jaymar-Ruby, Inc.*, 497 F.2d 433 (2d. Cir. 1974), in which the Second Circuit upheld the dismissal of a Section 38 claim for attorneys' fees, on the ground that such fees are not recoverable as damages under that section. *Id*. at 439.  Although the court noted that, in a case "where an absolutely false registration was fraudulently obtained *solely* for the purpose of instituting completely vexatious litigation . . . attorneys' fees might be awarded as a matter of equity quite apart from § 38," *id*. (emphasis in original), there is no need for such equitable consideration here, as Barbarian makes no suggestion that PRL obtained its trademarks solely to engage in litigation, vexatious or otherwise.  On the contrary, Barbarian has itself submitted evidence to the Court suggesting that PRL obtained its "RUGBY" trademarks for the purpose of opening a store with a new retail concept (*see* Am. Compl., Ex. M (news article dated Oct. 25, 2004, describing PRL's intentions for opening a store selling "RUGBY"-branded merchandise)), a purpose wholly apart from the institution of litigation.

Barbarian does not dispute that, if *Blue Bell* were applied, its Section 38 claim for attorneys' fees incurred in this litigation would be barred, but argues that the continued viability of this Second Circuit decision is in question, as it was decided prior to the 1975 amendment of the Lanham Act that added the attorneys' fee provision of Section 35.  (*See generally* Pl. Mem.) More precisely, Barbarian's logic is as follows:  In 1956, the Second Circuit held, in *Academy Award Products, Inc. v. Bulova Watch Co.,* 233 F.2d 449, 450 (2d Cir. 1956), that attorneys' fees *could be* recoverable as damages under Section 38 of the Lanham Act.  But when the Supreme Court then held, in *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714 (1967), that attorneys' fees could *not* be awarded as damages under the Lanham Act in an infringement

5

case, the Second Circuit, in *Blue Bell,* reversed its prior course, finding that the rationale of *Fleischmann* precluded an award of attorneys' fees in a Section 38 case, as well.  In particular, the Second Circuit adopted *Fleischmann's* reasoning that fees could not be awarded as damages on a statutory claim absent explicit or implied Congressional authorization for such damages, and that Congress had given no such authorization for claims brought under the Lanham Act. *See Blue Bell,* 497 F.2d at 438-49.  According to Barbarian, the fact that Congress later amended the Lanham Act to provide express authorization in Section 35 for attorneys' fees awards undermines the rationale of *Fleischmann* and, by extension, of *Blue Bell,* and suggests that this Court should now revert to *Academy Award Products* as controlling authority in this Circuit. (*See* Pl. Mem. at 3-4.)

   Barbarian's argument, however, ignores the fact that courts within this circuit and elsewhere have flatly rejected this logic.  Long past the date of Congress's amendment of the Lanham Act, *Blue Bell* has been relied on by this Court and others to preclude attorneys' fees as a measure of damages in Section 38 cases.  *See, e.g., Martal Cosmetics, Ltd. v. Int'l Beauty Exchange*, No. CV 01-7595 (SJF)(JO), 2006 U.S. Dist. LEXIS 97604, at *81 (E.D.N.Y. Sept. 22, 2006) (where "[t]he only conceivable injury the defendants could claim is that . . . they have been damaged in the amount of their legal fees and costs," their claim would fail, as, under *Blue Bell,* "[t]his is simply not a cognizable injury for purposes of § 1120"), *report and recommendation adopted in relevant part,* 2007 U.S. Dist. LEXIS 20526 (Mar. 22, 2007); *GMA Accessories, Inc. v. Idea Nuova, Inc.,* 157 F. Supp. 2d 234, 243 (S.D.N.Y. 2000) (holding that "attorneys' fees are ordinarily not recoverable under § 38"); *Pilates, Inc. v. Current Concepts, Inc.,* 120 F. Supp. 2d 286, 314 n. 20 (S.D.N.Y. 2000) (citing *Blue Bell* in rejecting an award of

attorneys' fees as damages under § 1120, where the necessary "exceptional showing" had not been made); *Havana Club Holding, S.A., v. Galleon, S.A.,* No. 96 Civ. 9655 (SAS), 1998 U.S. Dist. LEXIS 4065, at *7-8 (S.D.N.Y. Mar. 31, 1998) (finding attorneys' fees "not ordinarily recoverable under § 1120," except possibly in the narrow circumstance left open by *Blue Bell,* where "'an absolutely false registration was fraudulently obtained solely for the purpose of instituting completely vexatious litigation.'" (quoting *Blue Bell,* 497 F.2d at 439)); *see also Aromatique, Inc. v. Gold Seal, Inc., et al.,* 28 F.3d 863, 876 (8th Cir. 1994) (finding that, [i]f an award of fees were required by Section 38, that requirement would deprive courts of the discretion to award fees under Section 35, which discretion is limited to exceptional cases"); *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.,* 989 F.2d 985, 991 n.5 (8th Cir. 1993) (noting that "[a] § 1120 damage claim may not supplant the court's carefully circumscribed discretion to award fees under § 1117"); *Exxon Corp. v. Exxene Corp.,* 696 F.2d 544, 550 (7th Cir. 1982) (calling the argument that, "by amending section 35 Congress overruled *Fleischmann* and *Blue Bell*" "extremely tenuous conjecture").

Barbarian argues that the law in this area is "in flux" (Pl. Mem. at 3 (citing 6 *McCarthy on Trademarks and Unfair Competition* § 31.87)), but has cited no legal precedent supporting its position that *Fleischmann* and *Blue Bell* should be considered legislatively overruled. On the contrary, the only case law cited by Barbarian actually supports PRL's position. For example, in *Polo Fashions, Inc. v. Extra Special Products, Inc.,* No. 77 Civ. 5023, 1980 U.S. Dist. LEXIS 16290 (S.D.N.Y. Mar. 5, 1980) (cited in Pl. Mem. at 4), the Court relied on and quoted *Blue Bell* in concluding that attorneys' fees could only be awarded as damages in a false registration case where the registration was "fraudulently obtained solely for the purpose of instituting completely

7

vexatious litigation." *Id.* at \*20.  The Court then, in any event, found the case before it to be "exceptional" within the meaning of Section 35 of the Lanham Act, and awarded fees pursuant to that section.  *Id*. at \*24.[1]  In *Orient Express Trading Co., Ltd., et al. v. Federated Dep't Stores, Inc., et al.,* No. 84 Civ. 5964 (CBM), 1987 U.S. Dist. LEXIS 6132 (S.D.N.Y. June 17, 1987) (cited in Pl. Mem. at 4, n.2), the Court, in reliance on *Blue Bell,* went so far as to vacate its initial award of attorneys' fees and expenses to the extent that award had been based on Section 38, holding that the fee award should only have been permitted pursuant to Section 35.  *Id*. at \*5.  Finally, in *Havana Club* (cited in Pl. Mem. At 4, n.2), the Court rejected an award of attorneys' fees as Section 38 damages, finding that the defendants (as counterclaim plaintiffs) had "failed to make even a conclusory allegation" that plaintiffs' actions in attempting to obtain a trademark were "solely intended to facilitate meritless litigation," and that the defendants had thus "failed to state a claim for § 1120 attorney's fees under the narrow exception left open in *Blue Bell*."  1998 U.S. Dist. LEXIS, 4065, at \*8.  The Court considered, but rejected, the defendants' challenge to the continued viability of *Blue Bell, see id.* at n.7, and further held that an award of fees was unwarranted where the "defendants ha[d] failed to plead any facts which could show th[e] case to be extraordinary."  *Id.,* at \*9, n.7 (internal quotation omitted).

---

[1] Barbarian reads *Polo Fashions* as having awarded attorneys' fees as damages under Section 38, and suggests that PRL's current argument that such damages are not recoverable is "disingenuous," in light of the fact that it was "the beneficiary" of the Court's ruling in that case. (*See* Pl. Mem. at 4.)  Yet while the plaintiff in *Polo Fashions* (which presumably bears some relation to PRL) did contend that it was entitled to an award of attorneys' fees as damages, it only prevailed in that contention, to the extent it did, because the case was found by the Court to fall within the narrow exception noted in *Blue Bell,* an exception not applicable here.  *Polo Fashions, Inc.*, 1980 U.S. Dist. LEXIS 16290, at \*24.

Given the settled state of the law, which, in fact, has been consistent in this circuit for 35 years, Barbarian simply has no basis for its argument that it should be permitted to seek, as Section 38 damages, the attorneys' fees and related costs that it has incurred in this litigation. Accordingly, I recommend that PRL's motion to bar Barbarian from seeking such "damages" be granted.

## II.   BARBARIAN IS ALSO NOT ENTITLED TO RECOVER ITS PRE-LITIGATION ATTORNEYS' FEES AND COSTS.

In their submissions to the Court, neither party clearly parses Barbarian's pre-litigation legal fees from its litigation-related legal fees, or suggests that these arguably different categories of attorneys' fees should be treated differently under the law. As noted above, however, PRL appears to make the argument that, to the extent Barbarian's pre-litigation fees would not be precluded as damages based on the above analysis, any claim for such attorneys' fees and costs would, in any event, be barred under the so-called *Noerr-Pennington* doctrine. (*See* Def. Mem. at 1-2.)

This doctrine, which derives from a trilogy of antitrust cases decided by the Supreme Court[2] and is based on First Amendment principles guaranteeing the right to petition the government, immunizes from antitrust scrutiny "mere attempts to influence the passage or enforcement of laws," *Noerr*, 365 U.S. at 135, regardless of any anticompetitive motives behind these attempts, as well as good-faith attempts to secure legitimate goals through administrative agencies and courts, *California Motor Transp.,* 404 U.S. at 510-11. The doctrine has also been

---

[2] *See Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508 (1972).

extended to areas outside of the antitrust arena,[3] and has specifically been held to immunize trademark holders from liability for, *inter alia,* sending pre-litigation demand letters and filing lawsuits.[4]  The doctrine, however, does not shield a defendant from liability for instituting "sham" litigation, *see Noerr,* 365 U.S. at 144; *Prof'l Real Estate Investors v. Columbia Pictures Indus.,* 508 U.S. 49, 60-61 (1993), or from a claim for damages where it has knowingly and willfully misrepresented facts to a government agency, *see Walker Process Equipment, Inc., v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174 (1965) (where plaintiff sought to enforce a patent obtained by false representations, defendant could obtain damages from plaintiff on counterclaim); *Litton Systems, Inc., v. American Telephone and Telegraph Co.*, 700 F.2d 785, 810-12 (2d Cir. 1983), *cert denied,* 464 U.S. 1073 (1984) (defendant's active misleading of federal agency with respect to a tariff filing constituted actionable abuse of the administrative proceedings despite defendant's claims of *Noerr-Pennington* immunity).

Here, Barbarian has specifically alleged that it has been injured by PRL's assertions of trademark rights that PRL obtained by means of misrepresentations to the PTO.  Thus, if it were

---

[3] *See, e.g., Whelan v. Abell,* 827 F. Supp. 801, 803 (D.D.C. 1993) ("[I]f a person has a protected right to bring an objectively-based antitrust claim against a competitor, the same protection must be afforded to others who bring other such objectively-based claims and allegations before a government agency or court."), *rev'd on other grounds,* 48 F.3d 1247 (D.C. Cir. 1995).

[4] *See, e.g., Amerimax Real Estate Partners, Inc. v. RE/MAX Int'l., Inc.*, No. 05 C 5300, 2006 U.S. Dist. LEXIS 73762, at *6 (N.D. Ill. Sept. 26, 2006) ("It is well-established that entities holding trademarks may lawfully seek to protect those trademarks."); *Barq's Inc. v. Barq's Beverages, Inc.*, 677 F. Supp. 449, 452-53 (E.D. La. 1987) (where trademark litigation initiated in good faith, plaintiff's actions preceding the lawsuit including demand letters were protected under the *Noerr-Pennington* doctrine); *March Madness Athletic Ass'n, L.L.C. v. Netfire, Inc., et al.,* No. 3 CV 0398, 2002 WL 32168078, at *1 (N.D. Tex. June 4, 2002) (finding defendants' "efforts to enforce their trademark rights, namely: [defendants] sending cease and desist letters . . . are immunized under the Noerr-Pennington doctrine").

necessary for the Court to engage in a *Noerr-Pennington* analysis, the Court might find that this case falls within a *Noerr-Pennington* exception.  The Court, however, need not engage in this analysis, as none of the relevant case law suggests that pre-litigation attorneys' fees should be treated any differently from litigation-related fees, for purposes of Section 38.

Indeed, nowhere in *Fleischmann*, *Blue Bell,* or their progeny has a distinction been drawn between litigation and pre-litigation attorneys' fees and costs, incurred at different stages of the same trademark dispute.  On the contrary, when presented with claims for attorneys' fees that, while not incurred in the litigation before the court, were incurred in related contexts, courts have relied on *Fleischmann* and the other authority cited above to hold that such ancillary fees and costs should be subject to denial as equally outside the scope of Section 38.  *See Havana Club,* 1998 U.S. Dist. LEXIS 4065, at *4, *7 (finding that Section 38 did not permit recovery for legal fees incurred in responding to threats of litigation); *see also 3M Co. v. Intertape Polymer Group, Inc.,* 423 F. Supp. 2d 958, 966 (D. Minn. 2006) (denying damages claim for costs incurred in producing documents and witnesses as a third party in an earlier litigation, on the ground that, in light of *Gilbert/Robinson* and *Blue Bell,* such damages are not available under Section 38); *DeMert & Dougherty, Inc. v. Chesebrough-Pond's, Inc.,* 348 F. Supp. 1194, 1195, 1198-99 (N.D. Ill. 1972) (denying plaintiff's request for recovery of its expenses in prosecuting prior trademark cancellation proceedings, in light of *Fleischmann*).  Similarly, where attorneys' fees incurred in earlier proceedings have been sought in this Court as actual damages for trademark infringement, the Court has found no authority in the Lanham Act for granting such a damages award.  *See Altadis U.S.A., Inc. v. Cuban Cigar Brands, N.V.,* No. 96 Civ. 4209 (BSJ)(JCF), 2001 U.S. Dist. LEXIS 6892, at *12-14 (S.D.N.Y. May 17, 2001) (noting, *inter alia,*

11

that "[n]either the language nor the structure of the Lanham Act supports such an award," and that "the construction advocated by the plaintiffs would allow them to recover attorneys' fees for trademark infringement without meeting the 'exceptional case' standard"), *report and recommendation adopted by* Order, dated May 31, 2001.

Accordingly, and also because Barbarian has advanced no argument that the Court should distinguish between its pre-litigation and litigation attorneys' fees, I further recommend that Barbarian be precluded from seeking as Section 38 damages not just the attorneys' fees and costs it incurred in this action, but also its related, pre-litigation attorneys' fees and costs.

### III. BARBARIAN SHOULD BE PRECLUDED FROM INTRODUCING, AT TRIAL, ANY EVIDENCE OF ITS CLAIMED SECTION 38 DAMAGES.

Lastly, this Court notes that Barbarian has not come forward in this case, either during the discovery phase or on the pending motion, with any evidence to suggest that it suffered any other type of injury as a result of PRL's alleged false statements to the PTO, apart from attorneys' fees and other defense costs.

In its Amended Complaint, Barbarian alleges only that, by PRL's assertions of trademark rights derived from fraudulent registrations, Barbarian "is being damaged . . . [by] having to defend itself and establish its rights to use its marks." (Am. Compl., at ¶¶ 34, 40, 47.)  Similarly, in its required disclosures under Rule 26(a) of the Federal Rules of Civil Procedure, Barbarian stated that its damages "are in the nature of attorneys' fees and costs." (Saenz Decl., at Ex. D.) Barbarian apparently has never updated or modified this disclosure, and nowhere in its opposition papers on PRL's motion does Barbarian assert that it has suffered or is suffering any other type of injury as a result of PRL's purported fraudulent procurement of its trademark registrations.

As, for the reasons discussed above, Barbarian is not entitled to recover its attorneys' fees or costs as a measure of damages under Section 38, and as it has not come forward with any alternative claim of loss, it should be precluded from introducing any evidence of Section 38 damages at trial.  Accordingly, unless Barbarian is able to demonstrate that the amount of its attorneys' fees is independently relevant to some other claim or defense in this case, it should be precluded from informing the jury of the amount of those fees.  As PRL points out (*see* Def. Mem. at 12-13), this would not prevent Barbarian from making an appropriate fee application under Section 35 of the Lanham Act, after trial, should it prevail in this case.  This Court presently sees no reason, however, for the jury to be made privy to the amount that Barbarian has spent on counsel in or prior to this litigation, and agrees with PRL that the danger of undue prejudice would outweigh any probative value of which the Court is currently aware.  *See* Fed. R. Evid. 403.

## **CONCLUSION**

For all of the foregoing reasons, I respectfully recommend that the Court grant PRL's motion (Dkt. 91) to preclude Barbarian from seeking damages under Section 38 of the Lanham Act, 15 U.S.C. § 1120, and from introducing any evidence of such damages at trial, including the amount of its attorneys' fees and costs.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl, United States Courthouse, 500 Pearl Street, Room 1030, New York, New York

10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Koeltl. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       February 24, 2009

RESPECTFULLY SUBMITTED,

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. John G. Koeltl, U.S.D.J.

all counsel (via ECF)